UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 00-445 (DWF/RLE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>V.<br><br>PARCEL OF REAL PROPERTY<br>LOCATED IN MALMO, MINNESOTA,<br><br>DEFENDANT. | ) | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CLAIMANT RONALD WAHLSTROM'S MOTION TO ENFORCE SETTLEMENT AGREEMENT |

INTRODUCTION

This civil forfeiture action was filed on February 29, 2000, seeking the forfeiture of 40 acres of real property located in Malmo, Minnesota, along with other items of personal property. A statement of claim was filed by Ronald Wahlstrom and other claimants. A settlement of this case was reached on April 2, 2002, at a settlement conference held before Magistrate Judge Raymond Erickson. The settlement provided that the defendant real property would be forfeited to the United States, with Claimant Wahlstrom due to receive 30 percent of the net proceeds when the property was sold. Judgment was entered on June 28, 2002, and title to the property passed to the United States. Various unfortunate events outlined below subsequently ensued. On June 4, 2003, Claimant Wahlstrom and his attorney Barry Voss were advised, pursuant to the settlement agreement, that Wahlstrom must vacate the property by July 4, 2003. However, on July 5, 2003, Claimant Wahlstrom and others were caught on the property dismantling and removing a pole barn. Ronald Wahlstrom has been indicted for this conduct in a

case set for trial on August 2, 2004. Claimant Wahlstrom has now brought a motion to enforce the settlement agreement, seeking the 30 percent of the net sale proceeds he claims he is due under the settlement agreement.

The Claimant's motion to enforce the settlement agreement should be denied. First, the Claimant has not established that this Court has post-dismissal ancillary jurisdiction over the settlement agreement at issue. Second, in the event this Court determines it does have jurisdiction, this Court should stay its consideration of this matter until the criminal case against Claimant Wahlstrom involving the same conduct is resolved. Finally, if the Court chooses to address the merits, the Claimant's motion should be denied because the Claimant has breached the settlement agreement.

STATEMENT OF FACTS

1. On April 2, 2002, a settlement was reached in this case before Magistrate Judge Raymond L. Erickson between the United States and Claimant Ronald Wahlstrom relating to 40 acres of the defendant real property (hereinafter "the Wahlstrom 40 acres"), a 1999 Ford Explorer, and the proceeds from the sale of a 1986 John Deere 450E Crawler Dozer and a 1997 Daewoo Skid-Steer Loader DSL 801. The terms of the settlement were entered on the record before Magistrate Judge Erickson, and were incorporated in a written settlement agreement presented to Claimant Wahlstrom and his

attorney the next day. *See* Stipulation for Settlement of Claim; Declaration of James S. Alexander, Exhibit 4.

2. An Order of Dismissal was filed on April 3, 2002. The Order dismissed this action with prejudice, "the court reserving jurisdiction for ninety (90) days to permit any party to move to reopen this action, for good cause shown, or to submit and file a stipulated form of final judgment, or to seek enforcement of the settlement terms."

3. Despite the settlement that had been reached, Claimant Wahlstrom refused to sign the settlement agreement. On May 1, 2002, upon motion of the United States to have the terms of the settlement enforced, the Court entered an order enforcing the settlement and requiring Claimant Wahlstrom and his attorney to sign the Stipulation for Settlement within 5 business days of the date of the Order. *See* Order for Enforcement of Settlement Agreement. Claimant Wahlstrom eventually signed the Stipulation for Settlement on June 3, 2002, "under protest" as noted under his signature, and his then-attorney, Daniel Guerrero, signed it on June 17, 2002.

4. A Default Judgment and Final Order of Forfeiture was entered on June 28, 2002. *See* Default Judgment and Final Order of Forfeiture. The Default Judgment and Final Order of Forfeiture specifically ordered, in part, that:

. . . .

> 4. the 40 acres of the defendant real property, legally described as the Southwest Quarter (SW 1/4) of the Southwest Quarter (SW 1/4) of Section 21, Township 45, Range 25, Aitkin County, Minnesota, is forfeited to the United States free and clear of any and all claims, except as provided in the Stipulation for Settlement of Claim between the United States and Claimant Ronald Wahlstrom and the Stipulated Expedited Settlement Agreement and Order between the United States and Claimant Bremer Bank, N.A., and shall be disposed of in accordance with law and the foregoing stipulations;
>
> . . . .
>
> 6. all other terms of the stipulations for settlement filed in this action are deemed in full force and effect and shall be executed.

5. On July 11, 2002, the United States Attorney's Office directed the United States Marshals Service to dispose of the Wahlstrom 40 acres pursuant to the Default Judgment and Final Order of Forfeiture entered June 28, 2002 and the stipulations for settlement with Claimants Ronald Wahlstrom and Bremer Bank, which held a mortgage on the property. *See* Affidavit of United States Marshals Service Administrative Officer Diane Wilcox (hereinafter "Wilcox Aff."), ¶3. The stipulation for settlement provided that Claimant Wahlstrom and his wife could continue residing at the Wahlstrom 40 acres until its sale by the United States Marshals Service under the conditions specified in the stipulation:

> 4. The United States agrees that Claimant Ronald Wahlstrom and his wife, Guadalupe Wahlstrom, may continue to reside at the defendant 40 acres pending its sale in consideration for the following:

a. Claimant Ronald Wahlstrom agrees that the United States Marshal may, prior to the entry of the Final order of Forfeiture and upon notice to his undersigned counsel, inspect the defendant 40 acres and video-tape its condition and proceed to select a realtor for the sale of the defendant 40 acres.

b. Claimant Ronald Wahlstrom agrees to cooperate in the sale of the defendant 40 acres by maintaining the defendant 40 acres in acceptable condition for showing as requested by the United States Marshal and the realtor and by complying with requests for closing documents including, but not limited to, executing any and all documents necessary to transfer title to the defendant 40 acres free and clear of any and all claims by him and Guadalupe Wahlstrom as requested by the United States Marshal and the realtor.

c. Claimant Ronald Wahlstrom agrees that he and Guadalupe Wahlstrom will vacate the defendant 40 acres prior to closing on the sale as directed by the United States Marshal and will leave the defendant 40 acres in acceptable condition for transfer to the purchaser.

d. Claimant Ronald Wahlstrom agrees that he and Guadalupe Wahlstrom will pay all utilities and the mortgage payments due Claimant Bremer Bank, N.A., up until he and Guadalupe Wahlstrom vacate the defendant 40 acres.

*See* Stipulation ¶4. The settlement stipulation further provided that Claimant Wahlstrom was to receive 30% of the net sale proceeds from the sale of the real property, after payment of the closing costs and payment of the mortgage balance due Claimant Bremer Bank. Stipulation ¶3.

6. On or about September 3, 2002, the United States Marshals

Service contracted with Roger L. Danielson of Coldwell Banker to market the Wahlstrom 40 acres. Wilcox Aff.¶4. Due to the discovery of a potential mold contamination problem in the lower level of the residence, serious marketing of the Wahlstrom 40 acres was delayed until approximately November, 2002, after the United States Marshals Service obtained an analysis and cleanup of the mold contamination problem. *Id.*

7. On or about January 3, 2003, the United States Marshals Service was advised that the residence at the Wahlstrom 40 acres had burned to the ground. Wilcox Aff. ¶5. Marketing of the property was suspended pending the fire investigation, which subsequently indicated that the fire was the result of arson. *Id.* The investigation remains open.[1] *Id.*

8. By letter dated June 4, 2003, sent certified mail, return receipt requested, to Claimant Ronald Wahlstrom and his new attorney, Barry Voss, the United States Marshals Service advised Claimant Wahlstrom that, since the residence on the Wahlstrom 40 acres had been destroyed by fire and the Wahlstroms were no longer living there, there was no need for him to be at the Wahlstrom 40 acres any more and he would be required to remove any personal

---

[1] The insurance company that insured the structure contends, as the government understands it, that it is not obligated to pay under the policy held by Claimant Wahlstrom because Wahlstrom did not own the property at the time of fire. Whether or not any insurance proceeds will be forthcoming in the future is unknown at this time.

property and vacate the property by July 4, 2003. *See* Wilcox Aff. Ex. B.

9. On July 5, 2003, Aitkin County Sheriff's Deputy John Drahota was advised by dispatch of a complaint regarding the Wahlstrom 40 acres. *See* Affidavit of Aitkin County Sheriff's Deputy John Drahota (hereinafter "Drahota Aff."). The complainant was concerned that there were currently people at the Wahlstrom 40 acres dismantling a garage/pole building. Drahota Aff. ¶3. The complainant advised that they believed the federal government had seized the property from Ronald Wahlstrom and no one had a legal right to it except the government. *Id.* Deputy Drahota requested that Aitkin County Deputy Sheriff Sheryl Smith stop at the property and identify any people and vehicles at that location. *Id.*

10. When Deputy Smith arrived at the Wahlstrom 40 acres at 12:12 p.m. on July 5, 2003, she noted there were three vehicles there, which were registered to Ronald Wahlstrom, Gary Hambleton, and Daniel Phillips. *See* Affidavit of Aitkin County Sheriff's Deputy Sheryl Smith ("Smith Aff."), ¶3. Deputy Smith identified four individuals at the property, including Ronald Wahlstrom, Gary Hambleton, Daniel Phillips and Donald Arends. *Id.* Deputy Smith noted that they appeared to be working on the garage/pole building and had tools around. *Id.*

11. Ronald Wahlstrom told Deputy Smith that he owned the property, and they were taking the siding off the building and were

going to replace it with log siding. *Id.* ¶4. He also stated they were going to rebuild the house. *Id.* Deputy Smith asked Wahlstrom about the seizure of the property, and he told Deputy Smith he had paperwork stating he could be there and his lawyer had told him to keep doing what he was doing. *Id.* Wahlstrom stated he owned the property and he was still paying taxes on it. *Id.* Deputy Smith asked Wahlstrom to show her the paperwork saying he had a right to be there, and he said his wife had it and she was in Aitkin. Wahlstrom then left to look for the paperwork. *Id.* While Deputy Smith remained there, the remaining individuals continued to work on the garage/pole building. *Id.* A few minutes later, Wahlstrom returned and told Deputy Smith that he could not find the paperwork. *Id.*

12. Deputy Smith walked around the building and noted the siding was taken off of the south side and the east side, which were areas that could not be seen from the road, and that most of the roof had been taken off. *Id.* ¶5. Deputy Smith also noted that Wahlstrom and the other individuals appeared to be taking the framing boards. *Id.* Deputy Smith advised Wahlstrom that he could be charged with theft if the government chose to do so. *Id.* Wahlstrom then said they would stop for the day, and Deputy Smith cleared the scene. *Id.*

13. On July 6, 2003, Deputy Drahota took photographs of the garage/pole building at the Wahlstrom 40 acres. *See* Drahota

Affidavit, Exhibits A-F. No one was present at the property when Deputy Drahota took the photographs. Deputy Drahota noted that the sheeting was gone from the roof, south side and east side of the building, and that there were framing boards missing from the east side of the building. There were no sheeting or boards at the property. Everything that had been removed from the building was gone. Drahota Aff. ¶5.

14. On September 5, 2003, the United States Marshals Service received a purchase offer of $60,000.00 for the Wahlstrom 40 acres. Wilcox Aff. ¶9.

15. On September 9, 2003, the United States Marshals Service was advised that the well pump had been removed and the drain field for the septic system had been bulldozed. Wilcox Aff. ¶10.

16. On September 14, 2003, the United States Marshals Service received an addendum to the appraisal for the Wahlstrom 40 acres indicating a new appraised value of $63,000.00, taking into consideration that the residence had been destroyed by fire and garage/pole building had been partially dismantled. *See* Wilcox Aff. Ex. C. This was $224,000.00 less than the January 2, 2002, appraisal the United States Marshals Service had obtained for the Wahlstrom 40 acres, which had then included a house and a complete garage/pole building. *Id.*, Exhibit A.

17. The United States Marshals Service accepted the purchase offer of $60,000.00 for the Wahlstrom 40 acres "as is" and closing

was scheduled for October, 2003. Wilcox Aff. ¶11.

18. On October 17, 2003, the United States Marshals Service received information that Ronald Wahlstrom was bothering the buyers of the Wahlstrom 40 acres. Wilcox Aff. ¶12. United States Marshals Deputy Kelly Sullivan called the Aitkin County Sheriff's Department, which indicated that they would tell Ronald Wahlstrom to stay off the property. *Id.*

19. On October 17, 2003, the sale of the Wahlstrom 40 acres was closed. Wilcox Aff. ¶13. After payment of all costs associated with the disposition of the Wahlstrom property, including the $7,718.96 for the realtor's commission and closing costs; payment of $9,959.40 to Claimant Bremer Bank for its mortgage; $600.00 for appraisals and title work; $2,596.98 to correct the mold contamination problem prior to sale; and $381.56 to put safety fencing around the basement of the destroyed residence; the net sale proceeds amounted to $38,743.12. *Id.* According to the stipulation for settlement with Wahlstrom, he was to have received 30% of the net sale proceeds, or $11,622.94. The United States Attorney's Office directed the United States Marshals Service to hold the distribution of the net sale proceeds pursuant to the stipulation for settlement with Claimant Wahlstrom until further notice. *Id.*

20. On December 16, 2003, Ronald Wahlstrom was indicted in the United States District Court for the District of Minnesota on

two counts of income tax evasion in violation of 26 U.S.C. § 7201 and one count (Count 3 of the Indictment) for destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a).[2] *See* Criminal Action No. 03-441 (JMR/RLE); Alexander Declaration Ex. 3. Count 3 of the indictment charges Claimant Ronald Wahlstrom with violating 18 U.S.C. §2232(a) in connection with his conduct in dismantling and removing the pole barn on the property that had been forfeited to the United States. Trial of this action is scheduled for August 2, 2004 before Chief Judge Rosenbaum.

21. By letter dated November 26, 2003, Claimant Wahlstrom's attorney was advised that the Claimant was in breach of the settlement agreement, and that, if necessary, the United States intended to bring this matter back before the Court with a request that the amount due Claimant Wahlstrom under the stipulation for settlement be reduced by the amount his dismantling of the

---

[2] Title 18, United States Code, Section 2232, provides that:

> Whoever, before, during, or after any search for or seizure of property by any person authorized to make such search or seizure, knowingly destroys, damages, wastes, disposes of, transfers, or otherwise takes any action, or knowingly attempts to destroy, damage, waste, dispose of, transfer, or otherwise take any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property under its lawful custody and control, shall be fined under this title or imprisoned not more than 5 years, or both.

garage/pole barn diminished the value of the property. Alexander Declaration Ex. 1. However, the correspondence proposed that the dispute be resolved informally. On March 22, 2004, the United States provided an additional copy of the correspondence of November 26, 2003, and again suggested that the parties agree to a informal resolution of this dispute. *Id.* Ex. 2. On April 21, 2004, Assistant United States Attorney James Alexander had a conversation with Sam Glover, one of Claimant's attorneys. During this conversation it was agreed that since the dispute regarding Claimant Wahlstrom's conduct in dismantling and removing a portion of the pole barn on property previously forfeited to the United States was the subject of a pending criminal indictment, the parties agreed to postpone any additional litigation concerning the settlement agreement until after the criminal case was resolved. Alexander Declaration ¶5. The United States was served with Claimant's motion on May 5, 2004.

ARGUMENT

I. Claimant Ron Wahlstrom Has Not Established That This Court Has Jurisdiction To Enforce The Settlement Agreement.

Claimant's motion to enforce the settlement agreement should be denied because the Claimant has not established that this Court has jurisdiction to resolve the current dispute over the settlement agreement resolving the civil forfeiture action. Whether this Court has post-dismissal ancillary jurisdiction to enforce the settlement agreement is a matter of subject matter jurisdiction.

*4:20 Communications Inc. v. The Paridigm Company*, 336 F.3d 775, 778 (8th Cir. 2003). "Enforcement of the settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 378 (1994). Ancillary jurisdiction does not exist to enforce a settlement agreement unless

> the parties obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal – either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.

*Kokkonen*, 511 U.S. at 381; *Miener v. Missouri Department of Mental Health*, 62 F.3d 1126, 1127 (8th Cir. 1995). "The burden of establishing federal court jurisdiction 'rests upon the party asserting jurisdiction.'" *4:20 Communications Inc.*, 336 F.3d at 779, citing *Kokkonen*, 511 U.S. at 377.

Claimant Ronald Wahlstrom has not established that this Court has post-dismissal ancillary jurisdiction to enforce the settlement agreement. In fact, the Claimant has not even addressed the issue in his motion. The Default Judgement and Final Order of Forfeiture forfeiting the real property at issue in this motion was entered on June 28, 2002. The Claimant filed this motion to enforce the settlement on May 5, 2004, nearly two years after judgment was entered in this case. The Claimant has not brought this motion

under Rule 60, Fed. R. Civ. P., nor has he cited any other provision of the Rules of Civil Procedure or any statutory provision as a jurisdictional basis for this motion.

Nor does it appear that this Court has jurisdiction under *Kokkonen* to resolve the dispute over the settlement agreement. As noted above, this Court entered an Order of Dismissal in this action on April 3, 2002. That Order dismissed this action with prejudice, "the court reserving jurisdiction for ninety (90) days to permit any party to move to reopen the action, for good cause shown, to submit and file a stipulated form of final judgment, or to seek enforcement of the settlement terms." The Court's order of dismissal is identical to the order of dismissal at issue in *4:20 Communications Inc. v. The Paradigm Company*, 336 F.3d 775(8th Cir. 2003).[3] The Eighth Circuit specifically held that the district court lacked ancillary jurisdiction over a motion to enforce the settlement agreement at issue:

> The district court's dismissal order did not incorporate the terms of the settlement. The court did expressly retain jurisdiction to enforce the settlement, but only for ninety days. Thus, when no party acted within that ninety-day period, the magistrate judge and the district court lacked ancillary jurisdiction to rule upon Paradigm's motion to enforce the settlement agreement.

*4:20 Communications Inc.*, 336 F.3d at 778. Similarly, given the identical language in the order of dismissal at issue in this case,

[3]The order of dismissal entered in *4:20 Communications Inc.* is quoted in the Eighth Circuit's opinion, 336 F.3d at 777.

it would appear that this Court lacks subject matter jurisdiction to rule on Claimant's motion to enforce the settlement agreement. At a minimum, it is incumbent on the Claimant to demonstrate to the Court where the jurisdictional basis for this motion lies.

II. To The Extent This Court Determines It Has Jurisdiction To Resolve A Contractual Dispute Regarding The Settlement Agreement, This Court Should Stay Further Consideration Of This Matter Pending Resolution Of Claimant Ronald Wahlstrom's Criminal Indictment.

In the event this Court determines it has jurisdiction to hear the Claimant's motion to enforce the settlement agreement, the United States moves this Court to stay its determination of the merits of the current contractual dispute pending the resolution of Claimant Wahlstrom's criminal case. Title 18, United States Code, Section 981(g), provides that:

> (1) Upon motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

The dispute between the United States and Claimant Wahlstrom regarding the partial dismantling of pole barn is currently the subject of a criminal indictment. The Claimant has been charged under 18 U.S.C. § 2232(a) with respect to this conduct, and trial is scheduled for August 2, 2004. The resolution of the criminal charges will determine not only determine whether the Claimant's conduct violated the law, but will also determine whether, as the

United States contends, Claimant Wahlstrom has breached the settlement agreement. Moreover, since the Claimant would be subject to restitution in the event of conviction, the issue of damages resulting from that breach will also be effectively determined. It makes little sense for this Court to address the merits of Claimant's motion at this time. Therefore, if this Court exercises jurisdiction over this dispute the United States requests that this Court stay consideration of the merits of the Claimant's motion pursuant to 18 U.S.C. § 981(g), or a least continue the current matter, pending the resolution of the criminal case.

III. Claimant Ronald Wahlstrom's Motion To Enforce The Settlement Agreement Should Be Denied.

In the event that this Court decides to address the merits of the current dispute at this time, Claimant's motion to enforce the settlement agreement should be denied. The Claimant is in breach of the settlement agreement, and the United States would request an opportunity to submit additional evidence regarding the damages caused by Claimant' breach of the settlement agreement.

The Claimant is directly in breach of the settlement agreement. The final order of forfeiture in this case was entered on June 28, 2002. As of that date, title to the real property at issue, including the pole barn/garage, passed to the United States. The Claimant's assertion that he was dismantling the pole barn so that he could renovate it as a place to live is simply not credible under the facts. The settlement stipulation did provide that

"Claimant Ronald Wahlstrom and his wife, Guadalupe Wahlstrom, may continue to reside at the defendant 40 acres pending its sale" under specified conditions. Stipulation ¶4. However, the house burned down in late 2002/early 2003, and the Claimant was obviously not living in the pole barn after that point in time.

Moreover, the settlement stipulation provided that the Claimant would vacate the property when he was directed to do so by the U.S. Marshal:

> c. Claimant Ronald Wahlstrom agrees that he and Guadalupe Wahlstrom will vacate the defendant 40 acres prior to closing on the sale as directed by the United States Marshal and will leave the defendant 40 acres in acceptable condition for transfer to the purchaser.

Stipulation ¶4c. The Claimant and his attorney Barry Voss were sent a certified letter on June 4, 2003, directing Wahlstrom to vacate the property by July 5, 2003. Claimant's assertion that he was never directed to vacate the property is directly contrary to the facts. Moreover, on July 5, 2003, the Claimant was discovered to have dismantled and removed a substantial portion of the pole barn.[4] This hardly constitutes compliance with his agreement to leave the property in an acceptable condition for transfer, or to cooperate with the sale and maintain the property in an acceptable condition for showing (as stated in paragraph 4b of the Stipulation). In any event, no provision of the settlement

---

[4]The Affidavits of Deputy Smith and Deputy Drahota establish that, contrary to the Claimant's assertions, all of the material that had been removed from the pole barn had been taken from the property.

agreement allowed the Claimant to dismantle property that belonged to the United States. The Claimant had no legal right to make any physical changes to the real property which belonged to the United States, let alone to dismantle and remove portions of the pole barn.

Claimant Wahlstrom is clearly in breach of the settlement agreement and his motion to enforce the settlement agreement should be denied. To the extent that this Court intends to address the merits of this dispute at this time, the United States would request an opportunity to submit additional evidence regarding the damages caused by the Claimant's breach of the settlement agreement. These damages would at minimum include the amount by which the Claimant's conduct diminished the value of the property, and the value of the materials that the Claimant removed from the property.

CONCLUSION

The Claimant has not met his burden of establishing that this Court has post-dismissal ancillary jurisdiction over the settlement agreement resolving this action. To the extent that this Court determines it has such jurisdiction, the United States would request that this Court stay consideration of the merits of this dispute pending resolution of the pending criminal charges against

Ronald Wahlstrom. Finally, if this Court reaches the merits of this dispute, the Claimant's motion should be denied because the Claimant is in breach of the settlement agreement.

Dated: June 4, 2004

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

s/James S. Alexander

James S. Alexander
Attorney ID Number 166145
Attorney for Plaintiff
United States Attorney's Office
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Telephone: (612) 664-5600
Fax: (612) 664-5788